*In re* MARRIAGE OF SANDRA A. RUNGE, a/k/a Sandra A. Kohn, Petitioner-Appellant, and CHARLES W. KOHN, Respondent-Appellee.

First District (2nd Division)    No. 81-885

Opinion filed November 24, 1981.

Carr & O'Rourke, of Chicago, for appellant.

Alan Masters, of Argo-Summit, and Errol Zavett, of Chicago, for appellee.

JUSTICE DOWNING delivered the opinion of the court:

Petitioner Sandra A. Runge (Sandra) sought the issuance of a rule to show cause against her former husband, Charles W. Kohn[1] (Charles), for failure to pay the proper amount of child support and otherwise comply with the terms of their divorce decree, and sought an increase in child support. The trial court found that Charles was not liable for the alleged child support arrearages for several reasons and modified his support obligations. Unhappy with both of these results, Sandra appeals, contending that the trial court erred (1) in finding that Sandra was barred by equitable estoppel and laches from recovering any child support arrear-

---

[1] Charles changed his name to William Konn in 1973 or 1974.

ages which existed; and (2) in modifying Charles' future child support obligation from a fixed percentage of his income to a set monthly dollar amount.

Sandra and Charles were divorced in Cook County proceedings finalized on June 18, 1971. Incorporated into the divorce decree was a property settlement agreement of the parties. In that agreement, Charles acceded to Sandra having permanent custody of the parties' three minor children, then aged 5 (twins) and 8 months. Charles also agreed to pay a fixed dollar amount of child support per month.

Unfortunately, entry of the decree did not squelch the acrimony existing between the parties. Several post-decree proceedings followed, including Sandra's first petition for a rule to show cause against Charles, filed March 6, 1973. Therein, Sandra claimed that Charles was behind in his child support payments. Charles cross-petitioned for a reduction in his support obligations. After conducting a hearing, the circuit court ordered modification of the terms of the divorce decree by requiring that Charles would thereafter pay 40% of his net income, less certain deductions, per month. Additionally, Charles was to submit with each payment copies of his pay statements and statements of "unreimbursed employment expenses" with receipts therefor. The court also found Charles liable for a small amount of support arrearages. This order was entered June 8, 1973.

Sandra appealed from this order, and this court affirmed the circuit court. (*Kohn v. Kohn* (1974), 21 Ill. App. 3d 117, 315 N.E.2d 52 (abstract).) During the pendency of the appeal, Sandra filed a second petition for a rule to show cause. The outcome of that proceeding is not relevant here.

Between 1974 and 1980, the parties remained in a state of relative tranquility so far as the judicial system was concerned. However, on December 4, 1980, Sandra filed another petition for a rule to show cause for Charles' alleged failure to comply with the terms of the decree as then in effect, and for modification of that decree, seeking an increase in child support. The result of this petition serves as the subject matter of this appeal.

Three witnesses appeared at the hearing on Sandra's petition. Each party appeared on his own behalf and as a section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60) witness for the other. Charles also called his present wife to the stand. Review of the testimony of each party will be consolidated for convenience.

In her testimony, Sandra claimed that she received the monthly sum of $226.34 from Charles after entry of the court order of June 1973. She never received copies of Charles' pay statements or itemizations of expenses. She had reminded Charles of his duty in this regard several times over the years but had received "no real response." Sandra stated that she had not sought judicial enforcement of the terms of the court orders

because Charles had threatened to "alienate himself completely from his children, he would vacate the order and flee the state * * * and leave me with the entire burden of paying the expenses for the kids themselves." She did not believe that Charles had ever missed a payment.

Sandra related that she had met with Charles, his new wife, Sandra's then-fiance, and Sandra's and Charles' daughter in June 1974. Sandra stated that the meeting was for the purpose of discussing problems that the daughter was having. Sandra denied discussing alterations in the terms of Charles' child support obligations, and related that the five persons were never separated for any substantial period of time during the meeting.

Sandra also testified as to her then-current economic status. At the time of the hearing (March 1981), Sandra was employed as an operating room supervisor in a hospital, earning about $23,000 per year. In 1973, Sandra earned about $12,000 per year. Sandra estimated her monthly household expenses to be $1,481.90. She stated that the costs of raising the children had changed since 1973. The twins required cheerleading camp every summer. They were also sent on ski trips and to ski lessons. The youngest daughter needed dancing lessons and engaged in several costly school activities. The twins were about to acquire driver's licenses. All the children's clothing needs had increased. Sandra related that her only asset was her home, which she valued at $50,000 and which was mortgage-free.

Charles testified that he stopped paying Sandra 40% of his net income in July 1974. He also stopped tendering Sandra his pay stubs and expenses receipts at that time; prior to that time he had complied with the court order and tendered the data. Charles stated that he had a meeting with Sandra in June 1974. Also present were Charles' wife, Sandra's fiance, and one of Sandra's and Charles' daughters. The meeting was called to discuss problems of the daughter and Sandra's need for a "set budget because of her up and coming marriage." At the meeting, Charles informed Sandra that he was about to receive a pay cut at his job because of loss of business, and that consequently Sandra's child support payments (based upon the "40%" order) would be reduced substantially. Charles and Sandra thus agreed that he would pay Sandra a monthly sum of $226.34 in return for her waiver of her right to 40% of his income and her right to copies of his pay stubs and expenses receipts. Charles related that only he, Sandra, and Charles' wife were present at the time this agreement was reached, the other two having gone off to have their own conversation. The agreement was never reduced to writing, and no court order was ever acquired to modify the 40% clause of the earlier order.

Charles also stated that he was unemployed for six months sometime after the meeting, but that Sandra still received the monthly payment of $226.34. He further stated that he had relied upon the alleged agreement

in drawing up his family budget. Charles noted that since 1973, his income had increased substantially, to about $30,000 per year. Finally, Charles denied ever threatening that he would flee the State if Sandra instituted court proceedings due to her claim that he had not complied with the court orders regarding child support.

The third witness at the hearing was Charles' second wife. She testified to the June 1974 meeting much as had Charles. She stated that Charles had initiated the support modification discussion there. She related that Charles was out of work for six months in 1975, but that his payments to Sandra per the 1974 agreement continued. She testified that Charles had mailed Sandra the required copies of pay statements and expenses receipts prior to the meeting. Finally, she noted that the family's monthly budget was based in part upon an expectation that Charles owed Sandra the amount agreed upon at the 1974 meeting.

Following the arguments of the attorneys for the respective parties, the court found no wilful contempt on the part of Charles. Based upon laches and equitable estoppel, the court further barred Sandra from pursuing alleged arrearages. The court found the testimony substantiating the existence of an agreement to be more credible in light of the actions of the parties thereafter. Finally, the court modified Charles' future support obligation to $350 per month, based upon Sandra's income and assets, the children's ages, the cost of living, Charles' obligation to his new family, and "all the other factors * * * pursuant to section 505" of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 505).

I

Sandra argues that the trial court's finding that equitable estoppel and laches barred her claim for any child support arrearages which Charles might owe for the period prior to the hearing was against the manifest weight of the evidence and contrary to law.

■■ Clearly, a reviewing court may affirm a judgment of the trial court on any basis appearing in the record. (*Illinois Bell Telephone Co. v. Dynaweld, Inc.* (1979), 70 Ill. App. 3d 387, 394, 388 N.E.2d 157.) Neither Charles nor Sandra discusses the question of whether the evidence in this case sufficiently demonstrates the existence of a valid contract between the parties to modify the child support provisions of the divorce decree. We believe that this issue is central to the disposition of this appeal.

■■■ The general rule is that child support payments may be modified only by court order. However, an exception to that rule exists where the parties agree between themselves to alter the obligation. (See *In re Marriage of Strand* (1980), 86 Ill. App. 3d 827, 830, 408 N.E.2d 415, *appeal denied* (1980), 81 Ill. 2d 606.) In this case, Charles and his second wife

testified at the hearing to almost identical facts concerning the June 1974 meeting between Charles and Sandra. Both related that Charles offered to pay Sandra a set amount per month instead of the 40% figure found in the court order. At the time, Charles was anticipating a marked reduction in salary which would lead to a concomitant reduction in payments to Sandra under the court-ordered payment formula. Sandra denied the substance of this testimony, yet did not call either of the other two persons present during at least part of the meeting to bolster her viewpoint. Further, the evidence indicates that Sandra accepted the set-sum checks for over six years without formal protest prior to instituting this action. This certainly supports the theory that an agreement was reached. Sandra's claim that she withheld court action out of fear of retaliation by Charles is belied by both her prior litigiousness in the face of earlier arrearages by Charles, and by Sandra's familiarity with the court system as shown by the intricacy of her earlier court-oriented activities. Logical and objective assessment of the facts leads to the conclusion that the parties did in fact reach an agreement on the matter. The trial court apparently so found in its oral ruling on the case. In our opinion, the record here contains the requisite clear and unequivocal evidence that Charles and Sandra agreed to modify Charles' child support obligations, the terms being reflected in the manner in which Charles made the payments from July 1974 on. (See *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752.) As a consequence of this agreement, Sandra has no basis for claiming child support arrearages. The trial court's refusal to enter judgment for Sandra on this issue was correct. Further, since we have found a contractual basis upon which to reject Sandra's claim for arrearages, it becomes unnecessary for us to address her contention that the trial court erred in finding that laches and equitable estoppel barred her claim.

## II

Sandra argues that the trial court abused its discretion when it prospectively modified Charles' support obligations.

■■ ■ The modification of child support provisions rests in the sound discretion of the trial court and will not be interfered with in the absence of an abuse of that discretion or unless a manifest injustice has been done. (*In re Whitney* (1980), 90 Ill. App. 3d 734, 738, 413 N.E.2d 872.) Factors to be considered by the trial court in exercising its discretion include the financial resources of the children, the financial status of the custodial parent, the financial resources of the noncustodial parent, the standard of living the children would have enjoyed in the absence of the divorce, and the physical, emotional, and educational needs of the children. *In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 160, 408 N.E.2d 1021.

Testimony and stipulated evidence show that Sandra earns in excess of $1,260 net per month. She testified that her monthly household expenses are $1,481.90. Charles related that he nets $410 per week. Sandra lives in a house with no mortgage, valued by her at $50,000. She has no other assets. Charles has a mortgage and a baby. Sandra's twins are in high school; her youngest daughter is in fifth grade. Sandra testified to special expenses for the children; it is unclear whether these expenses are included in her estimated monthly expenses figure. The trial court raised Charles' support obligation to $350 per month from $226.34.

■■ We are unconvinced by Sandra's argument that this child support award is inadequate. Based upon Sandra's relatively good income, the upcoming ability of the twins to commence part-time work, Charles' needs for his second family, and the fact that the present award takes over 21% of Charles' income, this court finds no abuse of discretion in the trial court's modification of support order.

For these reasons, we affirm the judgment of the trial court.[2]

Affirmed.

STAMOS and PERLIN, JJ., concur.

---

[2] In her brief, Sandra also assigns error to the trial court's refusal to enter a rule to show cause against Charles for his alleged arrearages and failure to submit pay stubs. First, our analysis above renders this issue moot since the agreement of the parties negated Charles' duties for which Sandra sought the rule. Second, even if the rule were available, its purpose is solely to give the cited person the opportunity to show why he should not be held in contempt. Nothing in the record here indicates that Charles should be held in contempt.