*In re* MARRIAGE OF THERESE L. INGRASSIA, Petitioner-Appellant and Cross-Appellee, and DAVID A. INGRASSIA, Respondent-Appellee and Cross-Appellant.

Second District   No. 84—0845

Opinion filed January 27, 1986.

Dan Walker, Jr., of Oak Brook, for appellant.

Peter Alexander, of Alexander & Cicero, P.C., of Rockford, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Petitioner, Therese Ingrassia, instituted this action to modify a divorce decree entered by the circuit court of Winnebago County. Respondent, David Ingrassia, counterpetitioned for modification. After a trial, the court ruled in favor of petitioner, modified the decree accordingly, and denied respondent's counterpetition. Petitioner appeals from the judgment with respect to the amount awarded to her. Respondent cross-appeals with respect to the denial of his motion to terminate or greatly reduce maintenance.

Pursuant to the parties' divorce decree entered on May 9, 1975, petitioner was awarded custody of the minor child, Jacqueline, then age 7. Respondent was ordered to pay $250 per month in child support ($3,000 per year) and $750 per month for alimony ($9,000 per year). In addition, the decree provided that the parties were to jointly discuss and determine between themselves the need for and the payment of any extraordinary medical, hospital, dental, psychiatric and optical care for the child.

On March 3, 1982, petitioner filed a petition to modify the decree praying for an increase in child support and maintenance and for attorney fees incurred by her. Subsequently, two other counts and an amendment to the petition were added. Count II was filed on June 10,

1983. On June 30, 1983, petitioner filed a motion to amend the petition. Thereafter, petitioner sought leave to file count III. Count III was dismissed on a motion for summary judgment in favor of respondent. The remaining two counts of the petition to modify the decree and the emergency petition for psychiatric care, which was filed on October 23, 1983, were heard by the trial court on February 23, 1984.

Respondent is chief operating officer and director of First Federal Savings and Loan Association of Rockford. He has been employed by the association for the past 25 years. In 1975, respondent earned a gross income of $44,307 plus a $6,000 bonus. He earned income of $66,715.66 in 1982 and $66,617.16 in 1983 plus $4,800 income from director's fees. At the time of trial, respondent's salary was $70,000 plus a director's fee of $4,800.

In addition to his income, his employer paid for numerous expenses including, but not limited to, a private club's dues, automobile gas and maintenance, and insurance on his car, life, health and disability totalling approximately $11,200 in 1982 and $9,700 in 1983.

Respondent's other assets in 1984 included, among others, an $8,000 home equity as of 1978 and a joint bank account of $7,000. From September 1977 through June 1982, respondent voluntarily paid for Jacqueline's education at Keith Country Day School, a private school.

At the time of the divorce, petitioner stated her standard of living was "considered not just basic needs but also the higher standard *** of the upper class," one with "no financial restraints." She had received $10,000 a year for food, maids, gifts, and clothes. She went on trips four times a year and belonged to two local private clubs.

At the time of trial, petitioner was unemployed but had been seeking employment since 1982. She had earned the following gross income:

```
1975---------$2,660.00
1976---------  2,263.00
1977---------     -0-
1978---------  7,523.00
1979--------- 12,769.00
1980--------- 13,777.00
1981--------- 10,004.77
1982--------- 13,507.00
```

Petitioner was 43 years old in 1984 and is in good health. She had taught school before and after her daughter was born, but is unable to teach now because she cannot obtain certification since she has

only completed three years of college. Petitioner has held jobs in public relations and sales, researching and organizing, and publishing. She received an offer from a well-known publishing company but did not take it because she would not sell her home and could not afford tuition for her daughter at a private school in order to relocate in Chicago. Petitioner testified that from the time the petition was filed to the time of the hearing she was not employed because her daughter required 89-90% of her attention and the job market in Rockford was not good.

In 1974-75, petitioner had monthly expenses of $2,006.25, of which $482.20 was attributable to the child. In 1982, in a budget submitted into evidence which was based on her 1984 budget, her expenses were $4,701.33 per month of which $871.67 went to her daughter. She spent $52,700 in 1982. Eight hundred dollars a month was spent on food alone. In 1984, petitioner spent between $4,556 and $5,783, of which $1,909 was directly attributable to the child. Her 1984 budget included spending in the amount of $67,400.

Petitioner had borrowed $30,000 from her father to help her meet expenses. In addition, she filed for bankruptcy on February 10, 1984. Petitioner's home was in foreclosure, but this was stayed due to her bankruptcy petition. In 1975, her monthly mortgage payment was $243. In 1982, the payment was $887 and $1,000 in 1984.

The educational and psychological needs of the child, Jacqueline, who is now 17, were the subject of much testimony. From age three through ninth grade, Jacqueline attended Keith Country Day School at a cost in 1982 of $4,500 per year. Jacqueline did not go back to Keith because she refused to attend, her mother could not afford it, and her father refused to pay the tuition. Jacqueline also refused to attend a public school. As a result, she was enrolled in the public school's private home tutoring program.

In February 1984, because she felt Jacqueline needed to be in school and removed from the turmoil and stigma at home, petitioner placed her at Lake Forest Academy. Neither petitioner nor the child informed respondent of her enrollment.

The trial judge had stated at the hearing that enrolling her in a private school and then withdrawing her for insufficient funds due to the possible outcome of the modification decree might be harmful. Despite this, petitioner enrolled Jacqueline at Lake Forest. Respondent wanted his daughter to attend Baylor, another private school, because it was less expensive, was a larger school than Lake Forest, and had a more socio-economic mixture of children. Evidence was entered at the trial revealing that there were four schools in Illinois that boarded

sophomore girls. Lake Forest Academy was the most expensive, totalling $9,500 per year.

Two psychiatrists testified as to Jacqueline's future educational and psychological needs. Dr. Carol DuBois stated that in her opinion it would be advantageous for Jacqueline to attend school away from home because of problems with her teacher, her peers and the situation between her parents and the ensuing court litigation. Dr. Gerald Hoffman's testimony agreed with the other psychiatrist's opinion. He further recommended that Jacqueline receive therapy only during the summer months for one or two years.

The trial court also examined Dr. Hoffman. The judge was concerned about Jacqueline's "sit-down" strike against attending the school of her choice. The judge felt that it might be psychologically harmful for Jacqueline if he ordered her father to pay thousands of dollars to attend a school, which is what Jacqueline wanted all along. Dr. Hoffman agreed that this problem could escalate so that anytime Jacqueline wanted something all she had to do was stage a "sit-down" strike.

On March 15, 1984, the judge orally awarded an unallocated increase in child support and maintenance to $1,750 per month retroactive to March 3, 1982. The ruling also ordered petitioner to pay all of the child's educational expenses, one-half of any psychiatric care for the child and, upon proof of payment, respondent must pay the remainder. The judge denied respondent's petition to terminate or reduce the original maintenance and ordered respondent to pay $4,500 attorney fees incurred by petitioner. The judge thereafter directed petitioner to draw an order.

Respondent filed a motion to reconsider before the oral order was drawn. Petitioner filed a response and at the hearing, petitioner's attorney raised the question of the signed order. The trial judge again asked petitioner's attorney to submit a draft order. It was never done. On April 30, the judge, in a letter opinion directing respondent to draw an order, allowed reconsideration, reducing unallocated child support to $1,700 per month retroactive to February 1984. Petitioner filed her motion to reconsider before the letter opinion or the oral order were entered.

On June 28, 1984, the trial judge entered an order modifying the decree which embodied his oral ruling. The judge then signed the order of modification which incorporated his letter opinion that had modified the original oral ruling.

Petitioner again filed another motion to reconsider in which she argued that the order was inappropriate because the judge had ruled

on respondent's motion to reconsider before the entry of the original order. After argument, the judge, on August 9, 1984, denied her motion. Petitioner thus appeals, questioning whether the trial court had jurisdiction to entertain a motion to reconsider an oral judgment; whether the unallocated maintenance and support should have been retroactive to the date the petition was filed; whether a separate amount or larger sum should have been awarded for the child's education, and, whether she should be required to pay half of the child's psychiatric bills. Respondent cross-appeals from the denial of his petition to terminate or reduce maintenance.

■ The petitioner first argues that the court did not have jurisdiction to amend the oral order of March 15, 1984. She specifically contends that once the trial judge had orally announced his findings and had directed that it be reduced to writing, such ruling, pursuant to Supreme Court Rule 272 (87 Ill. 2d R. 272), did not become a final order until it was reduced to writing, signed and filed. She cites *Green v. Green* (1974), 21 Ill. App. 3d 396, 402, for her contention that until the oral decision is reduced to writing, signed and filed, the entire proceedings are in a state of temporary abeyance and the court has no jurisdiction to proceed further until such is accomplished. However, as stated by this court in *Cities Service Oil Co. v. Village of Oak Brook* (1980), 84 Ill. App. 3d 381, 383-84:

> "*Green v. Green* stands for no such proposition. It holds simply that the bare announcement of a final judgment, where the judge directs that it be reduced to writing, is of no effect until signed and filed. It is that oral judgment, and that alone, which is held in abeyance. It is that bare announcement of a final judgment which cannot be attacked by motion, or appealed from, or enforced. It in no way lessens the jurisdiction of the trial court to consider other motions or to enter other orders or judgments."

We find that the trial court did have jurisdiction to amend the oral order of March 15, 1984. The final order was not signed and entered until June 28, 1984. Before and until the final judgment is entered, the court retains jurisdiction and both parties, as they did in this case, could seek alterations in the oral ruling. Furthermore, here, the motion to reconsider was not entered until after the oral judgment was made final. See also *In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 930-31; *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 815.

■ Petitioner next argues that since she has shown that there has been a substantial change in circumstances warranting a modifica-

tion, it was an abuse of the trial court's discretion to award unallocated child support and maintenance retroactive to February 5, 1984, instead of March 3, 1982, the date petitioner's claim was filed. Respondent argues that section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510) does not mandate that modification of maintenance and support be retroactive to the date a petition is filed and that, under the facts of this case, the trial court did not abuse its discretion.

Section 510(a) states:

"*** the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of the motion for modification *** and only upon a showing of substantial change in circumstances." (Ill. Rev. Stat. 1983, ch. 40, par. 510(a).)

The question of whether modification of child support should be retroactive is within the discretion of the trial court. *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 687.

As respondent correctly argues, the record supports the trial court's decision. The following facts introduced into evidence reveal, among numerous other factors, that the trial judge did not abuse his discretion. In 1982, the petitioner earned approximately $13,500. Part of the petitioner's evidence submitted was based on past due debts. Furthermore, petitioner's 1982 budget was received into evidence, however, this was based on her 1984 budget. Additionally, in February 1984; she filed a chapter 7 bankruptcy petition (No. 84 B 20140). Although this, according to affidavit, was later converted to a chapter 13 wage earner plan, the record does not show that this was confirmed. Under the circumstances, the trial court properly determined that the allocation should be retroactive to February, 1984.

■ Petitioner next contends that the trial judge should have awarded a separate amount or a larger sum of unallocated support and maintenance to be paid by respondent for their daughter's education.

Section 505(a) along with the provision under section 513 of the Act (Ill. Rev. Stat. 1983, ch. 40, pars. 505(a), 513), by their terms, makes the award of money for the maintenance and/or education expenses discretionary with the trial court. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912; *In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 1006.) This discretion will not be interfered with in the absence of an abuse of that discretion or unless a manifest injustice has been done. (*In re Marriage of Runge* (1981), 102 Ill. App. 3d 356, 361.) In determining the propriety of an award, no single fac-

tor is controlling and each case depends on the individual facts. *Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 1009.

In light of the great expenditure for the private school in which Jacqueline was attending, petitioner's ability to seek and secure employment, the child's upcoming ability to commence part-time work (*In re Marriage of Runge* (1981), 102 Ill. App. 3d 356, 362), the financial resources and needs of respondent, and both parents' obligation to support their daughter, the trial court did not abuse its discretion in awarding $1,700 in unallocated maintenance and support.

■ Petitioner next argues that the trial judge abused his discretion by ordering respondent to pay one-half of the child's psychiatric bills only if the petitioner can prove she paid for one-half. She specifically posits that: (1) the judge is punishing the child at the expense of the mother because petitioner has no financial resources and therefore the child may not get the attention she needs; (2) the record does not indicate that petitioner incurs unnecessary expenses for psychiatric care; and (3) the judge had other alternatives available, such as consultation between the parties, arbitration, or requiring a second opinion.

As we stated before, courts of review are reluctant to interfere with the sound discretion of the trial court and will only reverse where the decision of the trial court is against the manifest weight of the evidence. (*Spencer v. Spencer* (1979), 73 Ill. App. 3d 735, 736.) Petitioner has failed to establish how the trial court's decision with regard to the psychiatric bills was against the manifest weight of the evidence. To the contrary, the evidence revealed that petitioner sought care for emergencies that were nonexistent. Dr. Hoffman, the petitioner's witness, stated that she was overprotective in matters concerning Jacqueline's medical care. In addition, petitioner filed for emergency psychiatric care and after the initial continuance, she never requested a separate hearing on that petition. Nor is there any evidence that petitioner actually obtained psychiatric care for her daughter in support of her petition despite the professed "emergency." Morever, Dr. Hoffman never expressed an opinion as to any psychiatric ongoing expenses or emergencies. He recommended that Jacqueline receive therapy, but not on a continuing basis, only during the summer months for one or two years.

The trial court felt that the parties should split the child's psychiatric care. The court stated: "Mrs. Ingrassia seemed to see emergencies that aren't actually on an objective basis or an emergency. And I think if she has to personally pay, she is going to think a lot harder before she incurs the expense. I think if she has to present proof she

has paid that amount before he has to pay his, we are going to avoid the problem of expenses being incurred and then simply going unpaid, as it happened in the past." We find the trial judge's effort to fashion a remedy which would accommodate the child's need for counseling while diffusing the demands of an overreactive mother was well within the range of his discretion.

■ In respondent's counterpetition, he maintains that the record shows that petitioner has acquired the skills to become financially independent, has had ample time and opportunity to obtain employment, and as contemplated under section 504(b) of the Act (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)), maintenance should therefore be terminated or greatly reduced.

Section 504(b) details all of the relevant factors the court must consider in determining the amount and duration of the award. In addition to the party's ability to become self-sufficient, and the time necessary to acquire education or training for appropriate employment, other factors include: the financial resources of the party seeking maintenance, including marital assets and child support payments; the standard of living established during the marriage; the duration of the marriage; the age and health of the parties; and the ability of a spouse to pay maintenance and meet his needs (Ill. Rev. Stat. 1981, ch. 40, pars. 504(b)(1) through (6)). The trial court's award of maintenance will not be overturned on review unless the trial court's findings and conclusions are against the manifest weight of the evidence. *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 631.

Respondent does not argue that there has not been a substantial change in circumstances to warrant a reversal of the trial court's award of unallocated maintenance and support. Rather, respondent posits that the recipient of an indefinite award remains under an obligation to seek appropriate training and skills to become financially independent, and the failure of a party to make a good faith effort to achieve that goal, following a reasonable amount of time, can form the basis for a petition for modification under section 510(a) of the Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(a)).

It should be noted, however, that the trial judge in his final order did not make an indefinite award of maintenance. He ruled it would be reconsidered at such time as the child reached age 18 or graduated from high school, whichever occurred later. This would occur within 2½ to 3 years from the date the order was entered.

A review of the record indicates that the trial court's award of $1,700 monthly was not an abuse of discretion. The court made an unallocated award of child support and maintenance of $20,400 per year.

This represents approximately 28% of respondent's annual income of approximately $71,000 for which he receives a tax deduction. See *In re Marriage of Murphy* (1983), 117 Ill. App. 3d 649, 655 (tax consequences should be taken into account when awarding maintenance); see also Ill. Rev. Stat. 1983, ch. 40, par. 504(b)(7).

In addition, the findings support the factors listed in section 504(b) (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)). The parties' marriage lasted 12 years. During that time, petitioner was employed as a teacher. However, now with only three years of college, she cannot obtain a teaching position. As of 1982, the date the petition was filed, respondent had supported her for seven years.

After the divorce, petitioner worked from 1975 to 1982. During that time, she earned a high of $13,777 in 1980. This would have been insufficient to meet her monthly expenses. (See *In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 103 (petitioner was entitled to maintenance since there was a great disparity in the parties' incomes and since she was unable to support herself at a level consistent with the standard of living established during the marriage).) Furthermore, petitioner has attempted to find employment.

Section 504(b)(2) does create an affirmative obligation by the spouse seeking maintenance to seek employment where plausible. (Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical & Practice Notes, at 529 (Smith-Hurd 1980).) However, even where the spouse is employed, the trial court may award maintenance if income earned is insufficient to provide for reasonable needs. (*In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 340-41.) Moreover, the trial judge is in a much better position to assess petitioner's education, training and skills. *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 634.

Under the circumstances of this case, including the fact that the trial court has retained jurisdiction in order to review maintenance within three years, the court's denial of respondent's petition to terminate or reduce maintenance was not an abuse of discretion.

Affirmed.

HOPF and LINDBERG, JJ., concur.