*In re* MARRIAGE OF MINDIRA MITTRA, Petitioner and Counterrespon-dent-Appellee, and RAJ MITTRA, Respondent and Counterpetitioner-Appellant.

Fourth District No. 4—82—0551

Opinion filed May 16, 1983.

Robert I. Auler, of Auler Law Offices, of Urbana, for appellant.

Burt Greaves, of Greaves & Lerner, of Champaign, for appellee.

JUSTICE MILLER delivered the opinion of the court:

This is an appeal by respondent Raj Mittra from a judgment of the circuit court of Champaign County ordering him to pay maintenance of $1,800 to petitioner monthly. The maintenance award was a part of the final judgment in the parties' dissolution proceeding. In this appeal respondent does not challenge the trial court's provision of custody, support, distribution of marital assets, or the fact of maintenance. Respondent challenges only the amount and duration of the maintenance award. We affirm.

Petitioner Mindira Mittra and respondent Raj Mittra were married approximately 23 years and had three children; two were attending college at the time of the dissolution. Custody of the third child was awarded to petitioner, and respondent was required to pay $250 per month for her support.

Petitioner is 46 years of age and is employed part-time as a teacher's aide. Her estimated salary as of June 1981 was $226 net per month. Petitioner had received a master's degree in history from the University of New Delhi (India) in 1957 but had never been employed in her field of study. Petitioner assumed the role of full-time housekeeper and mother during the parties' marriage. At the hearing on maintenance, petitioner testified that she was unaware of employment prospects and felt incapable of finding employment to use her degree.

Respondent is 49 years old and is employed by the University of Illinois as a professor of electrical engineering. He derives a substantial income from his profession and other consulting work and had managed to accumulate a significant amount of property during the parties' marriage. An affidavit filed by respondent lists only $3,398 net monthly as his income although respondent's tax returns for the years 1979 and 1980 show more substantial earnings. For the taxable

year 1980, respondent and petitioner reported total taxable receipts of $82,170. Of this sum only $6,720 can be attributed to petitioner's employment, leaving respondent with a gross monthly income of approximately $6,287.

The expenses of the parties were significant, though neither party has challenged the reasonableness of the other's listed expenses. Petitioner's June 1981 affidavit of expenses and income shows monthly requirements of $2,325; respondent's estimate of monthly expenses totaled $2,940.

As a part of the final order of dissolution, each party also received substantial assets, some of which had income-producing potential. The trial court awarded the petitioner the marital home (equity $105,000), a stock portfolio (value $20,390), a $1,000 money market fund, checking and savings accounts (value $900), a 1976 Dodge Aspen (equity $2,500) and $25,000 in cash. Respondent received a house in Champaign (equity $20,000), two tax-deferred annuities (value $50,682), a University of Illinois retirement fund ($58,775 in contributions), a "T. Rowe Price Fund" valued at $20,145, other tax-sheltered investments of $8,000, a Buick Regal automobile (equity $1,000), and checking and savings accounts (value $600).

In support of respondent's contention that the trial court abused its discretion in the award of maintenance, he makes the following arguments: (1) The trial court based its maintenance award on speculation of his future income; (2) the trial court failed to consider all of petitioner's sources of income; (3) the trial court abused its discretion in failing to consider the temporary nature of respondent's consulting work; and (4) the trial court erred in not considering petitioner's employment potential.

■ Awards of maintenance under the Illinois Marriage and Dissolution of Marriage Act are governed by the criteria of section 504 of that Act. (Ill. Rev. Stat. 1981, ch. 40, par. 504.) Under this section, an award of maintenance may only be granted if the court finds that the spouse seeking maintenance: lacks sufficient property including marital property to provide for reasonable needs, and (1) is either unable to support herself through appropriate employment, (2) is the custodian of a child requiring in-home care, or (3) is otherwise without sufficient income. At bar, respondent does not challenge the trial court's award of maintenance but only the amount of the award.

■ Section 504(b) details the relevant considerations for the court in determining the amount and duration of the award. Among the factors are the financial resources of the party seeking maintenance, including marital assets and child support payments, that party's ability

to become self-sufficient, the time necessary to acquire education or training for appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age and health of the parties, and the ability of a spouse to pay maintenance and meet his needs. (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1) through (6).) In reviewing the trial court's award of maintenance we will not overturn the trial court's findings and conclusions unless such are against the manifest weight of the evidence thus showing an abuse of discretion. *In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285; *In re Support of McGrew* (1980), 90 Ill. App. 3d 27, 412 N.E.2d 996; *In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092.

Respondent's first contention is that the trial court improperly considered his future potential rather than his actual income in determining the award. Respondent states in his brief that his after-tax income is $57,000 but that the trial court considered he had $70,000 annual net income. Respondent further asserts that he has never made as much as $70,000 per year.

Our examination of the record and of the exhibits offered by petitioner persuades us that such assertion finds no support. The trial court never used the figure of $70,000 annual net income. What the trial court did state was that "it appeared to the court that his reasonable income potential was in the neighborhood of $70,000 a year." The court never assumed that respondent made $70,000 *net* a year. In addition, the claim by respondent that he has never made $70,000 per year is inaccurate. Respondent's 1980 joint tax returns shows gross receipts of approximately $81,670. Discounting this figure by petitioner's yearly earnings of $6,720 leaves respondent with well over $70,000 gross per year contrary to his assertion.

It is clear that the trial court did not use respondent's potential income rather than his actual income in assessing the award of maintenance. Moreover, it is not improper in all cases for the trial court to use income potential rather than actual income. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.) Although the trial court used a figure reflecting respondent's gross income in arriving at its award, nothing in the record persuades us that the trial court failed to take this into consideration.

In making a maintenance award the trial court must also consider the financial resources of the party seeking maintenance, including marital property apportioned to her. (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1).) The trial court awarded petitioner a stock portfolio valued at $20,390, a $1,000 money market fund and $25,000 in cash. Re-

spondent's argument that the trial judge did not consider these amounts is again unsupported by the record. The court noted in its judgment order that it was aware of the fact that petitioner had received income-producing assets and clarified this at the post-trial hearing by pointing out that he did impute some reasonable rate of return to the income-producing assets.

■ Respondent's suggestion that the court failed to consider the income potential of this property is again refuted by explicit statements of the trial judge. We have no doubt that the trial judge imputed some reasonable rate of return to those assets awarded which formed a part of the parties' marital estate. The fact that he did not determine with mathematical certainty the amount of return does not indicate he failed to consider this factor, among several, in fixing the award. In any event we would note that the trial court is not required to make explicit findings of the factors it considered in an award of maintenance. (*In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418.) All that is required is a sufficiently detailed basis in the record to support the award.

■ At the hearing on the maintenance petition respondent related that he was working as a consultant for NASA, Lockheed and other defense-oriented industries during the year. Those contracts were neither of unlimited duration nor certain to be renewed. The trial court indicated in its findings that it did consider the temporary nature of this income but discounted this factor in light of evidence suggesting that respondent's skills were highly in demand. On appeal, respondent suggests that this income should not have been considered by the trial court. We disagree.

The fact that income was earned by respondent was certainly a factor the trial court properly considered. Whether it would continue in the future is a question appropriate to virtually all sources of income, whether they be considered permanent or temporary. If a source of income, no matter how certain the probability it will continue, should cease, this matter then becomes an appropriate factor to support a petition to modify an order of maintenance as is provided by section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(a)). *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.

■ Our review of the record persuades us that the trial court's award of $1,800 monthly was not an abuse of discretion. Respondent has not challenged here or below the reasonableness of petitioner's affidavit of expenses and income nor did he challenge the trial court's finding that he was able to pay the maintenance award and meet his

needs. After subtracting respondent's monthly income of $226 from her monthly needs of $2,325, petitioner has a monthly deficit of $2,099. Although certainly some income can be expected from the income-producing assets, petitioner will also be required to pay income taxes on the monthly maintenance payment of $1,800. We cannot say that the trial court abused its discretion in its award of maintenance. *Bramson; Lovejoy.*

A more bothersome aspect of the trial court's award if the indefinite term of the maintenance payments. Respondent challenges both the trial court's entry of this indefinite award and also its implicit conclusions that petitioner was unemployable.

The evidence presented below reveals that petitioner was born and educated in India and moved to the United States in 1958. At the time of the hearing she was 45 years old. Although she did receive a master's degree in history of her country from the University of New Delhi in 1957, she had never worked in that field. From the time of the parties' marriage petitioner had assumed the role of homemaker and mother. She had no specific skills and had been employed only part-time as a teacher's aide for the past eight years.

■ It is clear that the trial court has the power to order maintenance for an indefinite period. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868; Ill. Ann. Stat., ch. 40, par. 405, Historical & Practice Notes, at 272 (Smith-Hurd 1980).) In fact, Public Act 82—716, effective July 1, 1982, amended section 504 to explicitly provide that a maintenance order could be for an indefinite period. Ill. Rev. Stat. 1981, ch. 40, par. 504(b).

Respondent's reliance on *In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804, is misplaced. In *Marsh* this court upheld an award of maintenance of $500 per month for two years. The opinion discussed only whether the prerequisites for maintenance of section 504(a) had been established, and nowhere in the opinion is there a discussion of the propriety of the two-year limit.

One of the appropriate considerations which should govern the duration of the maintenance award is the extent to which the receiving spouse is shown to have either the present ability to become self-sufficient or the future ability to acquire skills which would allow entry into the job market. This consideration is explicitly provided for in section 504(b)(2) of the Act under which the court, in awarding maintenance, is to consider "the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment." Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(2).

In *Wisniewski*, this court held that an award of indefinite mainte-
nance of $600 per month was an abuse of discretion. There the wife
was pursuing a master's of library science degree, held a bachelor's of
music degree and was earning $923 net per month. In holding that
the award of indefinite maintenance was an abuse of discretion we
emphasized the respondent's educational background, her present ed-
ucational pursuits and the substantial likelihood that she would be
able to support herself within a definite time period.

Conversely, in *In re Marriage of Bramson* (1981), 100 Ill. App. 3d
657, 427 N.E.2d 285, a two-year maintenance order was held to be an
abuse of discretion. There, as here, the evidence indicated a long-term
marriage and an accompanying absence from the job market for a
considerable period. Striking down the limit on the award, the appel-
late court noted:

> "It appears that this provision of the trial court's order was
> based on speculation as to the future condition of the parties,
> specifically, that respondent's employment income would be suf-
> ficient to support her needs. [Citation.] Should respondent's in-
> come increase as a result of employment or other sources of
> support, or should there be a substantial change in the circum-
> stances of the parties, either of them can petition for a modifi-
> cation of the maintenance award. [Citations.] However, at this
> time, a limit on the duration of the alimony period is inappro-
> priate." 100 Ill. App. 3d 657, 659, 427 N.E.2d 285, 287.

■ Here, the trial court specifically noted the fact that petitioner
had never been employed in her field of study during the marriage
and the absence of evidence showing that petitioner had embarked
upon a planned course of study to develop marketable skills as in *Wis-
niewski*. The trial judge's order in this case indicates that he carefully
considered petitioner's situation in making the award indefinite. The
trial judge is in a much better position than we are to assess petition-
er's education, training and skills, and we cannot conclude that his
findings were manifestly erroneous under the circumstances pre-
sented in this case. *In re Marriage of Westphal* (1981), 99 Ill. App. 3d
1042, 426 N.E.2d 303.

■ Despite our affirmance of this indefinite award, we do note
that petitioner is under an affirmative obligation to seek appropriate
training and skills to become financially independent in the future.
This is inherent in the concept of rehabilitative maintenance which is
embraced within the Act and is reflected in the comments to section
504(b)(2):

> "This subsection directs the court to consider the time neces-

sary for the party seeking maintenance to acquire sufficient education or training to find employment. This concept of rehabilitative maintenance is new to Illinois law. The amount and duration of such maintenance should be determined by reference to what is necessary to obviate marriage-conditioned needs and to enable a formerly dependent spouse to acquire financial independence for the future. Under prior decisional law, there was no duty to seek employment. [Citation.] *This subsection creates an affirmative obligation on the part of the spouse seeking maintenance to seek employment, where plausible, and this reflects one of the most important changes brought about by this Act.* [Citations.]" (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical & Practice Notes, at 529 (Smith-Hurd 1980).

The failure of the petitioner to make good-faith efforts to achieve this goal, following a reasonable time frame during which the objective should be accomplished, might form the basis for a petition for modification pursuant to section 510(a) of the Act. Ill. Rev. Stat. 1981, ch. 40, par. 510(a); *Tan v. Tan* (1972), 3 Ill. App. 3d 671, 279 N.E.2d 486; *Lindsay v. Lindsay* (1977), 115 Ariz. 322, 565 P.2d 199.

 At the hearing on respondent's post-trial motion, the trial court remarked that "[t]here was no suggestion as to what the education or training would be, what sort of job Professor Mittra had in mind that his wife would secure by this education and training; again I believe that this is the same as any other civil law suit that the court cannot go through putting evidence in gaps in the case where evidence belongs, and that's the obligation of the parties." Respondent contends that this statement by the trial court indicates that it erroneously put the burden on him to demonstrate petitioner was employable.

The statement upon which respondent relies was made by the trial court at the post-trial hearing and, if anything, indicates that the trial court correctly imposed the burden on respondent to prove the allegations of his post-trial motion.

For the foregoing reasons, the order of the circuit court of Champaign County directing respondent to pay petitioner maintenance of $1,800 monthly is affirmed.

Affirmed.

WEBBER, P.J., and TRAPP, J., concur.