2021 IL App (1st) 191878-U

THIRD DIVISION
June 23, 2021

No. 1-19-1878

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| BRIDGETTE WILLIAMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 L012244 |
| | ) | |
| PETER OLSON, | ) | Honorable |
| | ) | James Snyder, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vacated and remanded. Defendant did not receive notice of motion to reconsider, requiring vacatur of trial court's judgment reinstating default judgment against defendant.

¶ 2    This legal malpractice case began with a default judgment against defendant Peter Olson, who was sued individually along with his law firm. Defendant successfully moved to vacate that judgment (the court reserved the issue of default for a later date). Plaintiff then moved for reconsideration of that vacatur but did not give notice to defendant of her motion, much less the motion itself. Defendant, who resided in Florida, learned of the hearing on the motion to reconsider through the docket system and sent an attorney to represent him at the hearing. The

trial court reconsidered its previous ruling and re-entered a default judgment against defendant following that hearing.

¶ 3    We vacate and remand, as the record establishes that defendant never received notice of the motion or hearing, nor did he receive the motion itself. Defendant was prejudiced in that the motion was granted without either defendant or his counsel having even read plaintiff's motion to reconsider. The noncompliance with the rules governing notice thus cannot be excused.

¶ 4                                    BACKGROUND

¶ 5    Bridgette Williams hired Chicago Family Law Group, LLC ("CFLG") to represent her in a suit against her child's father for the contribution of college expenses. See generally *In re Brown*, 2019 IL App (1st) 182027-U. Defendants Olson and Lyons were attorneys at CFLG who allegedly represented Williams in that case (it appears that Olson denies that fact). This case stems from CFLG's representation in that suit.

¶ 6    In November 2018, Williams filed a *pro se* complaint against Peter Olson, Joi Lyons, and CFLG for breach of contract, breach of fiduciary duty, negligent and fraudulent representation, inflation of attorney's fees and inadequate representation regarding past legal services.

¶ 7    Initially, the cause was dismissed for want of prosecution and later reinstated. On April 18, 2019, Williams served all three defendants through the Cook County Sheriff with both a summons to appear on April 29, 2019, as well as a copy of the complaint. Process was served on a "Kathy Camacho" at CFLG's Chicago office for all three defendants. Neither Olson nor Lyons were personally served with process.

¶ 8    On June 21, 2019, after the defendants failed to appear at the status hearing, a default judgment was entered in favor of Williams in the amount of $98,885.76.

¶ 9      On July 12, 2019, Olson filed an appearance with the trial court as a *pro se* litigant. In his appearance form, he provided the court with a St. Petersburg, FL mailing address and a personal email address (not one affiliated with the CFLG law firm, that is).

¶ 10      On July 15, Olson filed a motion to set aside the June default order against him. In his motion, Olson claimed that he first learned of the litigation against him when he received a copy of the default judgment order from the court that was sent to CFLG's Chicago office. He also states that he was never properly served with process, as the complaint and summons were not left with him personally, nor were they left at his abode or residence with another person residing there. The trial court scheduled a hearing for July 31.

¶ 11      On July 24, Olson mailed Williams notice of the July 31 hearing via certified mail to her home address in Farmington, Minnesota. Williams did not receive notice of the hearing until Monday, July 29, just two days before the hearing.

¶ 12      Williams did not appear at the July 31 hearing. The court vacated the judgment against Olson, though it left the finding of default intact and set a status hearing on that question on September 4.

¶ 13      On August 2, Williams promptly filed the motion under review in this appeal, a motion to reconsider the July 31 order that vacated the judgment against Olson. A hearing on the motion was scheduled for August 15. The record includes a document titled "notice of hearing" that was filed by Williams on August 2. The notice was addressed to CFLG's office address in Chicago but not to Olson at his Florida address that was on his appearance. The record does not include any proof of service for this notice.

¶ 14    Olson was not personally present at the August 15 hearing, but counsel appeared on his behalf. His lawyer stated that she was present on behalf of the defendant in regard to "the plaintiff pro se motion" and that "[w]e have not received a copy."

¶ 15    Counsel later elaborated that her clients had received no notice of the motion or of the motion itself: "They have not received notice of this—they didn't receive notice of this hearing date and they have not received a copy." Counsel added that Olson only knew of the motion because he had seen it on the online docket; Olson otherwise had been under the impression that the next hearing date would be the September 4 status hearing. The court responded that counsel was present and thus the court considered defendants to have received notice.

¶ 16    The court discussed with counsel that her client, in his opinion, had possibly engaged in misrepresentations in originally moving to set aside the default judgment on July 31 (the precise details are not clear in the record, nor are they necessary to our resolution).

¶ 17    The court then reconsidered its July 31 order and re-entered judgment in favor of Williams in the amount of 98,885.76. In addition, the court made the following findings:

> "(3) the court finds that defendant submitted to the jurisdiction of the court and had been previously granted leave to respond to the complaint and failed to do so;

> (4) the court hereby admonishes the defendants for making false statements in court at the last court date and for failure to appear in propria persona at the instant date."

¶ 18    Olson filed a timely appeal.

¶ 19                                    ANALYSIS

¶ 20    The sole issues on appeal are whether Olson received proper notice of the motion to reconsider and, if not, the consequences of inadequate notice.

¶ 21    Notice and an opportunity to be heard are necessary principles of procedural due process. *People ex rel. Illinois Commerce Comm'n v. Operator Communication, Inc.*, 281 Ill. App. 3d 297, 302 (1996). Whether Olson received proper notice is a question of law we review *de novo*. *Segal v. Dep't of Financial & Professional Regulation*, 404 Ill. App. 3d 998, 1002 (2010).

¶ 22    Proof of service in the trial and reviewing courts is governed by Illinois Supreme Court Rule 12 (eff. July 1, 2017).  Rule 12(a) requires that proof of service shall be filed with the clerk. *Id.*, § 12(a). The form of proof of service depends on the manner of service (e-filing, e-mail, personal delivery, U.S. mail, etc.). See generally *id.* § 12(b).

¶ 23    If a party substantially complies with the service requirements in Rule 12, we presume that notice is proper. *CitiMortgage Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 39; *Ingrassia v. Ingrassia,* 156 Ill. App. 3d 483, 502 (1987). That presumption holds even if the defendant denies receiving the notice. *Bernier v. Schaefer*, 11 Ill. 2d 525, 529 (1957) (otherwise, "[i]f the proper giving of the notice can now be frustrated by the mere allegation of the defendant that he did not receive it, then the giving of notice by mail cannot be relied upon even though the rules specify such a method."); *Lewis*, 2014 IL App (1st) 131272, ¶ 39. We will forgive minor defects in notice if they do not result in unfairness or prejudice to the opposing party. *Acosta v. Sharlin*, 295 Ill. App. 3d 102, 106 (1998).

¶ 24    Here, unfortunately, the record contains no proof of service of the motion to reconsider heard on August 15. Nor is there any indication in the record as to how Williams delivered the notice of motion, or the motion itself, to Olson. Olson filed an appearance providing a Florida address and a personal e-mail. But there is no record that Williams utilized either source of contact.

¶ 25    The record only contains a "notice of hearing" that comes nowhere close to being a proof of service. This notice is directed to all three defendants—CFLG, Lyons, and Olson—and bears the CFLG address in Chicago. There is no indication on that document that this notice was *delivered* to that address in any way—no reference to U.S. mail or personal delivery or e-mail. And while an affidavit from Williams is included within the "notice," the affidavit only swears that the above statements are true and accurate—nothing, again, about whether the "notice" was delivered, much less how or when or by whom.

¶ 26    More to the point as for Olson, the only appellant before us, there is clearly no proof that Williams sent this notice to Olson at his Florida address or to the email address he provided in his appearance. Even if we could somehow construe the "notice of hearing" as akin to proof of service (and we cannot), there is still no indication whatsoever that Olson himself was ever served in a proper fashion.

¶ 27    We therefore find no compliance whatsoever with Rule 12. See *Ingrassia v. Ingrassia*, 156 Ill. App. 3d 483, 502 (1987) ("no proof of service whatsoever appears in the record. There was therefore no compliance with the requirements of Rule 12.").

¶ 28    On the other hand, as both Williams and the trial court noted, Olson was represented by counsel at that hearing. This court has held that even the presence of both the party and counsel did not cure a total noncompliance with Rule 12. See *In re Plank*, 169 Ill. App. 3d 411, 415 (1988); *In re King*, 148 Ill. App. 3d 741, 746 (1986). But those cases involved involuntary commitment, implicating a fundamental liberty interest, and thus may or may not be distinguishable from a case involving a judgment of nearly $100,000 against a party.

¶ 29    Indeed, in a non-Rule 12 case involving notice under the Juvenile Court Act of a delinquency proceeding, our supreme court held that defective notice to the mother was cured in

light of the mother's participation in the proceedings. See *In re J. W.*, 87 Ill. 2d 56, 62 (1981). The mother had actual notice and was not prejudiced by the lack of formal notice, given that "she appeared in court and participated actively in the proceedings without objection." *Id*. Thus, in the court's view, "[c]onsiderations of fairness [were] all on the State's side," and it would be unfair to allow the mother to sit mute through the proceeding without objecting to notice and then, upon receiving an adverse judgment, raising a notice objection on appeal. *Id*.

¶ 30     In our view, however, vacatur is required here. The overriding question is one of fairness or prejudice. See *J. W.*, 87 Ill. 2d at, 62; *Acosta*, 295 Ill. App. 3d at 106. Here, for one thing, and quite unlike *J.W.*, counsel did lodge an objection; she told the trial court that her client had not received notice and that she had never even seen the motion to reconsider Williams had filed. That last point is not insignificant; even the finest of lawyers would be hard-pressed to adequately oppose a motion she'd never so much as seen. And given the trial court's comments regarding Olson's representations (or misrepresentations) at the previous hearing where the trial court vacated the judgment against Olson—the very judgment the court was now asked to reconsider—it is hard to imagine how counsel could have adequately responded, in any event, considering she was not present at that hearing and appeared to have rushed in at the last minute. Olson was clearly prejudiced by the lack of notice.

¶ 31     When a complete lack of compliance with Rule 12 prejudices the other party, "equity will not allow" the resulting judgment to stand. *Acosta*, 295 Ill. App. 3d at 106 (vacating grant of summary judgment when plaintiff did not receive notice of hearing until day of hearing); see *Ingrassia*, 156 Ill. App. 3d at 503 (reversing award of attorney fees when no proof of service on party could be found in record).

¶ 32     We emphasize that we have no comment on the merits of the trial court's ruling. Based on its oral comments and its written order, the court clearly suspected that its previous vacatur of the default judgment against Olson was obtained under false pretenses. Nothing we have said here should be interpreted as disturbing any such findings.

¶ 33     We likewise appreciate the court's frustration in trying to bring together in one courtroom a Minnesotan plaintiff and Floridian defendant. See *Ingrassia*, 156 Ill. App. 3d at 503 ("[w]e are sympathetic with" trial court's desire to resolve case on date of hearing, improper notice notwithstanding, "in view of the hardship to [counsel]" in traveling long distance to Winnebago courthouse for additional hearing). Still, we cannot overlook the lack of any proof of compliance with Rule 12.

¶ 34                                  CONCLUSION

¶ 35     The judgment of the circuit court is vacated. The cause is remanded for further proceedings on the motion to reconsider.

¶ 36     Vacated and remanded.