2019 IL App (1st) 182027-U

THIRD DIVISION
December 31, 2019

No. 1-18-2027

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF KEIAIREYONA BROWN. | ) | |
| | ) | Appeal from the |
| (Bridgette Pondexter n/k/a Bridgette C. Williams, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellant, | ) | |
| | ) | 04 D 90645 |
| v. | ) | |
| | ) | Honorable |
| Moses Brown, | ) | Jeanne Cleveland Bernstein, |
| | ) | Judge Presiding |
| Respondent-Appellee.) | ) | |

PRESIDING JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirmed. Without transcripts of evidentiary hearings that led to orders challenged, court cannot conduct meaningful review of circuit court's rulings and must presume their correctness. Record reveals no indication that trial court deprived petitioner of due process by ruling on her motion to reconsider.

¶ 2    Appellant, Bridgette Pondexter n/k/a Bridgette C. Williams (Bridgette) filed a petition against respondent Moses Brown (Moses) seeking contribution for, and allocation of, their daughter's college expenses. The court held evidentiary hearings and determined that Bridgette should be responsible for 25% of the expenses. Bridgette disagreed and appealed.

¶ 3    However, because we lack transcripts of those hearings, we are required to presume the court correctly considered the evidence and allocated the expenses. Accordingly, the court's judgment is affirmed.

¶ 4                                   BACKGROUND

¶ 5     Before we begin, the Illinois Supreme Court rules require a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate references to the pages of the record on appeal." Ill. S. Ct. R 341(h)(6) (eff. May 25, 2018). Argumentative language is inappropriate and against the mandate of the rule. *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 145-46 (2004). This court need not consider a parties' argumentative statement of facts and may instead rely on the record on appeal. *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 15.

¶ 6    We appreciate that Bridgette is *pro se*, but that does not excuse the requirement that she follow the Illinois Supreme Court Rules. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. Her brief is replete with irrelevant and argumentative facts. Many of them contain no citation, and based on our review, are not supported by the record on appeal. For the purposes of this order, we rely far less on Bridgette's statement of facts and more on our review of the record.

¶ 7    Bridgette and Moses were never married and had two children together. One of the children, Keiaireyona Brown (Keiaireyona) graduated high school in May 2015 and enrolled at Mississippi State University (MSU) that fall.

¶ 8    In February 2016, Bridgette filed a Petition for Contribution to Educational Expenses against Moses. Her petition requested that the court "[e]nter an order allocating a fair share to each party and the child, the post high school expenses for the child" including tuition, room and

board, etc. Bridgette claimed that Moses "earned some $90,000 in 2015," while her "only source of income is Social Security Disability Income." Moses answered the petition and alleged that he had been supporting Keiaireyona.

¶ 9    After some pre-trial issues, on August 23, 2017, the court, "hearing argument, hearing testimony, and reviewing exhibits," entered an order allocating educational expenses. The court ordered that Moses pay $6,255 directly to MSU for tuition, as well as $539.00 directly to Keiaireyona's landlord for apartment rent. It also determined that Bridgette and Keiaireyona were each responsible for paying $7,404 directly to MSU. Going forward, the court attributed 50% of expenses to Moses and 25% each to Bridgette and Keiaireyona.

¶ 10    On September 22, 2017, Bridgette filed a timely motion to reconsider. Her motion argued that the circuit court erred by "precluding the Petitioner's motion for invoking the common law doctrine of promissory estoppel as a cause of action in the Petitioner's petition for Contribution to College Expense." Bridgette also argued that the court misapplied the law and "abused its judicial discretion in its Order filed on August 23, 2017." Specifically, she argued that the court did not consider all relevant factors in its decision to allocate expenses.

¶ 11    Bridgette noticed her "Motion for Reconsideration" for October 16, 2017. On October 16, 2017, Bridgette drafted, and the court entered, an order continuing the "Petition for Contribution for College Expen." [*sic*] to November 22, 2017. On November 14, Bridgette filed an "Emergency Motion to Continue Status." In that motion, she states "[t]hat on October 16, 2017, the Petitioner filed a pro se Motion to Reconsider the Court [*sic*] August 3, 2017 [*sic*], which was apparently granted and the matter was set for hearing on November 22, 2017." The court granted the continuance. Ultimately, the court continued the hearing to January 4, 2018.

¶ 12    On that date, the court re-opened the proofs at Bridgette's request and heard testimony from the parties' daughter, Keiaireyona, regarding "the issues and her affidavit." The court's handwritten order specifically states: "[t]hat the Court notes K. Brown's testimony that [Bridgette] had changed the original affidavit executed by K. Brown and now contained incorrect information." The court refused to modify its order allocating educational expenses, as apparently the daughter's testimony did not help but actually hurt Bridgette's case. In its written order, the court specifically noted Keiaireyona' testimony "that [Bridgette] had changed the original affidavit executed by [Keiaireyona] and now contained incorrect information."

¶ 13    The court found that it properly applied the law and facts to its August order and that in the absence of new evidence, there was no basis to reconsider its decision. Finally, "the Court [found] that the order drafted by Petitioner on 10-16-17 setting a hearing date was to be on the Motion to Reconsider." Like the initial contribution order, we do not have a transcript of the hearing.

¶ 14    On January 25, Bridgette filed a motion to "[c]orrect the order entered on 1/04/2018." Bridgette "respectfully ask[ed] the court to correct the order filed on January 4, 2018 based on new evidence, and evidence and testimony that wasn't available and/or heard on January 4, 2018." On August 7, 2018, the court denied the motion to correct "w/prejudice."

¶ 15    Unlike the other two hearings, we do have a transcript of the August proceeding. Bridgette tried to explain that she had more evidence that she wanted the court to hear. However, the court declined to hear it because she had already had her chance to prove her case. The court told Bridgette that "[y]ou keep telling me stories and none of them ever play out and I'm not going to do anything with this." The discussion turned to Keiaireyona's affidavit:

MS. WILLIAMS: Ma'am, during her testimony I wasn't present and therefore, I don't even know what I'm accused of doing. And I didn't do it.

THE COURT: You're not accused of doing anything.

MS. WILLIAMS: She said—your Honor, from what he told me that was during my daughter's testimony, it said that I falsified the document. Ma'am, I've been before you three, four times after—

THE COURT: Oh yes, you have.

MS. WILLIAMS: Right. But if I did that, why would I keep coming—

THE COURT: She testified and what you said she was going to say is not anything near—now, you need to listen to me. Part of your problem is that you don't listen to anybody but yourself. And we've heard you over and over again and you weren't telling the truth."

¶ 16    At this point, Bridgette doubled down on her claim that Keiaireyona lied. In frustration, the Court said, "I should throw her in prison for contempt of court for six months? Is that what you're saying?" After more back and forth, the following exchange took place:

THE COURT: You want me to find that your daughter lied on the stand.

MS. WILLIAMS: No, she texted me saying she's lying.

THE COURT: Ma'am—

MS. WILLIAMS: She's saying—she texted me, saying it.

THE COURT: Ma'am did you hear what I said?

MS. WILLIAMS: Can I explain one thing?

THE COURT: Did you hear what I said?

MS. WILLIAMS: Ma'am, can I—

THE COURT: Repeat to me what I said about this.

MS. WILLIAMS: You said do I want to consider that my daughter was lying. She was lying.

THE COURT: Contempt of court, six months in jail.

MS. WILLIAMS: She was lying.

THE COURT: Do you understand that's what you want me to do?

MS. WILLIAMS: What do you want me to say? She was lying, ma'am and I have proof of it. I have proof that I sent her a copy—

THE COURT: Take it to the state's attorney and see if they'll prosecute her. I'm not doing any more on this case.

¶ 17    Finally, Bridgette tried to argue that she didn't have all the evidence she needed for the hearing on the 4th because the court refused to grant her a continuance. The Court responded: "You have proof of nothing ma'am. I am not reconsidering. Your motion to reconsider is denied. Thank you."

¶ 18    Even after court denied the motion, Bridgette persisted, claiming that she had evidence that her daughter lied on January 4th. The court responded:

THE COURT: Ma'am, I'm not inclined to put a child in jail because she told me the truth the first time.

MS. WILLIAMS: But she's not. I have proof that she—

THE COURT: You don't have any proof.

MS. WILLIAMS: Yes, I do have a stack of evidence and I submitted my documentation First of all, can I say something?

THE COURT: No, let me say something. She testified—okay, you go away. You turned your back on me one more time.

MS. WILLIAMS: I'm not turning my back. I'm trying to be respectful to you.

THE COURT: You're not respectful. You are not going to re-litigate this. I think that was the second or third time I litigated this because you kept telling me you had all this stuff and everybody else in the world was lying but you and you had absolute proof, you brought your daughter in. I heard your daughter. And what she said in the affidavit was not exact—was what she said and that was it."

¶ 19   To sum up, the court told Bridgette:

"You've been riding this horse for two years. You have gotten me to vacate an order with this behavior of yours. You have gotten me to reconsider at another point. I had to have too many hearings on this and then you swore up and down your daughter was going to come in an exonerate you and guess what? She testified exactly the opposite."

¶ 20   The hearing ended with the court threatening to hold Bridgette in contempt if she did not leave the courtroom.

¶ 21   Bridgette appeals.

¶ 22                                    JURISDICTION

¶ 23   A brief discussion of our jurisdiction, which we must consider regardless of whether it has been raised by the parties. *Daewoo International v. Monteiro*, 2014 IL App (1st) 140573, ¶ 72. At first blush, there might appear to be a potential jurisdictional problem, as Bridgette appears to have filed two postjudgment motions to reconsider—the "motion to reconsider" she filed within 30 days of the original judgment, and the "motion to correct" she filed within 30 days after her motion to reconsider was denied. As a general rule, successive post-trial motions

to reconsider do not extend the time for filing an appeal. Ill. S. Ct. 303(a)(2) (eff. July 1, 2017); *Dus v. Provena St. Mary's Hospital*, 2012 IL App (3d) 091064, ¶ 16; *Benet Realty Corp. v. Lisle Savings & Loan Ass'n.,* 175 Ill. App. 3d 227, 231-32 (1988)).

¶ 24      But in response to the timely "motion to reconsider," the trial court acceded to Bridgette's request to reopen the proofs and allowed her daughter to testify, which the trial court had the discretion to do. See *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 44. After considering the previous evidence and the new testimony from the daughter (which, as explained above, the trial court found to have backfired on Bridgette), the court declined to make any changes to its original judgment. That order was dated January 4, 2018.

¶ 25      Because the proofs were re-opened and new evidence heard, the court's original judgment on August 23, 2017 was no longer the final judgment in this case. Instead, the January 4, 2018 order was the final judgment at issue here, after the close of all evidence.

¶ 26      So when Bridgette, within 30 days of January 4, filed her "motion to correct" that requested a reconsideration of the January 4 order and the presentation of (still more) new evidence, *that* motion was a timely motion to reconsider, even if not perfectly labeled as such. We focus on the substance, not the label, of the motion. See *Shempf v. Chaviano*, 2019 IL App (1st) 173146, ¶ 36; *Burnidge Corp. v. Stelford*, 309 Ill. App. 3d 576, 579 (2000) (motion to "clarify" was, in substance, motion to reconsider judgment order).

¶ 27      This "motion to correct" was denied on August 7, 2018, and Bridgette appealed within 30 days of the denial of her timely postjudgment motion, on September 4. So her notice of appeal was timely. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) (notice of appeal timely if filed within 30 days after denial of timely postjudgment motion).

¶ 28      Having confirmed our jurisdiction, we turn to the merits.

¶ 29                                                    ANALYSIS

¶ 30     This case was taken on Bridgette's *pro* se appellant's brief only, in which she makes several arguments. First, she claims the court "deprived [her] of due process of law by failing to inform [her] of all the issues that would be addressed at the hearing conducted on January 4, 2018." She then makes arguments about the court's evidentiary and factual rulings.

¶ 31     Bridgette's arguments face an insurmountable hurdle—we do not have transcripts for the key hearings. The only transcript in the record is the hearing on the August 7, 2018 motion to correct. Her notice of appeal lists three orders: August 23, 2017 (initial contribution order); January 4, 2018 (motion to reconsider); and August 7, 2018 (motion to correct). However, while she superficially appeals the denial of the August 7 order, all her arguments, in fact, relate to the court's factual and evidentiary findings from the other two hearings.

¶ 32     For example, Bridgette argues "[t]he court refused to accept evidence [she] properly presented to the court but allowed [Moses] to present evidence on numerous occasions that was not properly submitted to the court; including a text message that was pertinent to the case and influenced the court's decision." She further claims she lacked evidence because of Moses' discovery violations. She also says "the court did not consider all relevant factors under 750 ILCS [5/513(j)]." She argues the factors were not weighed correctly based on certain evidentiary issues—such as failing to properly consider her income and medical issues.

¶ 33     But these arguments unquestionably require us to review what happened—the evidence that was presented. And we know the court did hear testimony, as the orders (and the one transcript we *do* have) expressly reference that fact. The court's written orders contain its conclusions. But without a transcript or bystander's report, we have no way of testing them.

¶ 34    When this court is faced with an inadequate record on appeal, as is the case here, supreme court precedent requires that we presume that the circuit court's order was in conformity with the law and properly supported by the evidence. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393 (1984). Based on the lack of transcripts for the August 2017 and January 2018 hearings, we have no choice but to presume the court properly heard and applied the evidence before it.

¶ 35    But this does not entirely end our review. Bridgette's first argument—denial of due process—does not *completely* require us to review a transcript. She contends that "[t]he court led [her] to believe her Motion to reconsider was granted on October 16, 2017 and the hearing on January 4, 2018 was only to address Keiaireyona's testimony; yet [that] testimony influenced the court's decision to rule [Bridgette's] motion to reconsider was granted in error and dismissing [the] motion to consider [*sic*]."

¶ 36    A quick review of the sequence of events: On September 27, 2017 Bridgette noticed her "*Motion for Reconsideration*" to be heard on October 16, 2017. On the date of that presentation, October 16, 2017, the court entered an order—which *Bridgette* drafted—setting "Petition for contribution for college expen." [*sic*] for hearing. That hearing was continued to January 4, 2018 because of Bridgette's emergency motion. Finally, the January 4 order, which specifically states "[t]hat the Court finds that the order drafted by Petitioner on 10-16-17 setting a hearing date was to be on the Motion to Reconsider."

¶ 37    Similar to her other arguments, we do not have a transcript of the motion presentation on October 16 *or* the January 4 hearing. All we know for sure is that Bridgette *must* have raised this concern with the trial court on January 4; otherwise, it would not make sense for the circuit court to make a specific finding on the intent of the October 16 order. Bridgette's brief contends the court "led [her] to believe her Motion to reconsider was granted on October 16, 2017." First,

because we don't have a transcript, we don't know what, if anything the circuit court may have said to "lead" her down the wrong path. That, alone, dooms her argument. See *Foutch*, 99 Ill. 2d at 393.

¶ 38     The lack of transcripts aside, the record does not appear to bear out Bridgette's claim. *She* noticed her *motion to reconsider* for October 16, 2017. *She* drafted the October 16 order setting a *hearing*, which the court later found was for argument on the motion to reconsider. The first indication of confusion was in *Bridgette's* emergency motion for continuance—where she states the motion to reconsider had "apparently" been granted on October 16. But the October 16 order does not grant (or deny) *any* motion—it simply schedules a hearing. And, based on our review of the record, *no* order ruled on Bridgette's motion to reconsider until January 4. While Bridgette may have been confused, there is simply nothing in the record that supports an argument that the court led her into that confusion.

¶ 39     So as best as we can cobble together information from the record, it does not support Bridgette's claim of a due process violation in any way.

¶ 40                                   CONCLUSION

¶ 41     For these reasons, we affirm the circuit court's judgment.

¶ 42     Affirmed.